IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASON THOMPSON, | : | |
|     Petitioner, | : | |
| | : | 1:19-cv-1165 |
| v. | : | |
| | : | Hon. John E. Jones III |
| H. QUAY, COMPLEXWARDEN, | : | |
| USP ALLENWOOD, | : | |
|     Respondent. | : | |

**MEMORANDUM**

**July 27, 2020**

Presently before the Court is a petition for writ of habeas corpus (Doc. 1) pursuant to 28 U.S.C. § 2241, filed by Petitioner Jason Thompson ("Thompson"), a federal inmate who was housed at the United States Penitentiary at Allenwood, White Deer Pennsylvania, at the time he filed the petition. He alleges that his due process rights were violated in the context of a disciplinary proceeding.

The petition is ripe for disposition and, for the reasons that follow, will be denied.

**I.    BACKGROUND**

The Federal Bureau of Prisons ("BOP") disciplinary process is fully outlined in Code of Federal Regulations, Title 28, Sections 541 through 541.8 (2011). These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate, or attempt to violate, institutional rules. The first step

requires filing an incident report and conducting an investigation pursuant to 28 C.F.R. § 541.5. Staff is required to conduct the investigation promptly absent intervening circumstances beyond the control of the investigator. 28 C.F.R. § 541.5(b).

Following the investigation, the matter is then referred to the Unit Disciplinary Committee ("UDC") for an initial hearing pursuant to 28 C.F.R. § 541.7. If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. *Id.* If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest or high category offenses, the UDC refers the matter to a Disciplinary Hearing Officer ("DHO") for a hearing. *Id.* Greatest Severity category offenses carry a possible sanction of, *inter alia*, loss of good conduct time credits. 28 C.F.R. § 541.3. In the event that a matter is referred for a hearing, the Warden is required to give the inmate advance written notice of the charges no less than 24 hours before the DHO hearing and offer the inmate a full time staff member to represent him at the DHO hearing. *Id.* at § 541.8 (c) and (d).

At the DHO hearing, the inmate is "entitled to make a statement and present documentary evidence" and has the right to submit names of requested witnesses and have them called to testify and to present documents. *Id.* at § 541.8(f). The DHO shall "call witnesses who have information directly relevant to the charge[s]

2

and who are reasonably available." *Id.* § 541.8(f)(2). The DHO need not call repetitive witnesses or adverse witnesses. *Id.* § 541.8(f)(3). The inmate has the right to be present throughout the DHO hearing except during "DHO deliberations or when [his] presence would jeopardize institution security, at the DHO's discretion." *Id.* § 541.8(e). The DHO must "consider all evidence presented during the hearing." *Id.* § 541.8(f). "The DHO's decision will be based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence." *Id.* The DHO has the authority to dismiss any charge, find a prohibited act was committed, and impose available sanctions. *Id.* at § 541.8. The DHO must prepare a record of the proceedings sufficient to document the advisement of inmate rights, DHO's findings, "DHO's decision", specific "evidence relied on by the DHO" and must identify the reasons for the sanctions imposed. *Id.* at § 541.8(f)(2). A copy must be delivered to the inmate. *Id.*

On July 16, 2018, while incarcerated at the Federal Correctional Institution in Cumberland, Maryland, Thompson received Incident Report 3146486, charging him with violating Prohibited Act Code 329, "Destruction of Government Property less than $100." The reporting officer described the incident as follows:

> On July 16, 2018 at about 12:05 p.m., I escorted Thompson, #31082-007, to cell 207 in the Special Housing Unit. As he was placed in the cell he stated, "I'm going to bust the sprinkle head." At about 12:06 p.m., Thompson was removed from hand restraints. He then used the bed and wall to balance himself so that he could tie a laundry bag around the sprinkler head. He then pulled on the bag that caused the

3

sprinkler head to break.  The valve of the sprinkler head is $53.40 per Mr. Harden in Facilities.

(Doc. 10-2, p. 10).  On that same date, he received notice of his rights, verbally indicated that he understood his rights, did not request witnesses, did not provide any written documentation, and offered "No comment." (*Id.* at 10, 11).

On July 18, 2018, the UDC referred the matter to the DHO due to the destruction of property and possibility of requiring monetary restitution. (*Id.* at 10).

The disciplinary hearing convened on July 23, 2018.  Prior to the commencement of the hearing, the DHO notified Thompson that he was erroneously charged with Prohibited Act 329 and that the proper charge was Prohibited Act 218, "Destroying, altering, damaging life safety device regardless of financial value." (*Id.* at 10, 8).  The DHO notified Thompson the change in charge allowed him to have an additional twenty-four hours to prepare a defense. (*Id.* at 8).  Thompson opted not to take advantage of the additional twenty-four hours.  Instead, he chose to proceed with the hearing as scheduled and executed a "Waiver of 24 hour Notice" stating "I have been advised that I have the right to have a written copy of the charge(s) against me at least 24 hours prior to appearing before the DHO.  I wish to waive this right and proceed with the DHO hearing at this time." (*Id.* at 8, 15).

During the hearing, the DHO reviewed Thompson's due process rights with him and he acknowledged understanding those rights. (*Id.* at 8). Thompson waived his right to a staff representative and his right to call witnesses and indicated that he had no documentary evidence to present. (*Id.* at 7, 8). The DHO read the charge and Thompson provided the following statement: "They put me in the cell with Inmate ___. I didn't feel comfortable in the cell with him because I was the one that found him passed out in unit and he blames me for being placed in the SHU and receiving an incident report. When I asked to be placed in another cell, they told me no, so I told them if they didn't move me I was going to break the sprinkler head. They told me go ahead. I tied the string around the sprinkler head bluffing and when I touched it the sprinkler head went crazy. They took us out of their [sic] and put us in another cell." (*Id.*).

In finding that Thompson committed the Prohibited Act 218 as charged, the DHO relied on the description of the incident in the Incident Report and Thompson's admission. (*Id.* at 8). He noted that there are avenues to address housing assignment concerns and that the behavior Thompson exhibited could not be overlooked or excused under any circumstances. (*Id.* at 9).

In sanctioning him with a disallowance of twenty-seven days good conduct time, 270 days loss of commissary, 120 days loss of email, and monetary restitution in the amount of $53.40, the DHO reasoned that "[t]he action/behavior

on the part of any inmate to destroy government property creates the potential for harm to yourself or others and interferes with the effective operation of the institution.  Destruction of government property cannot and will not be tolerate in this environment as it creates more cost for the operation of the institution.  The sanctions imposed by the DHO were taken to let the inmate know that he, and he alone, will be held responsible for his actions/behavior at all times." (*Id.* at 9).

## II.   DISCUSSION

Thompson's claim, that his due process rights were violated in the context of the disciplinary hearing process, and that these violations resulted in a loss of good conduct time, is properly the subject of this habeas petition because it directly impacts the duration of his confinement.  The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law."  U.S. CONST. amend. V.  Federal inmates possess a liberty interest in good conduct time. *See Wolff v. McDonnell*, 418 U.S. 539, 555-57 (1974); *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991).

When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive certain due process protections: 1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing; 2) the opportunity to call witnesses and present

documentary evidence when consistent with institutional and correctional goals; 3) assistance in presenting a defense if the inmate is illiterate; 4) an impartial tribunal; and 5) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. *See Wolff*, 418 U.S. at 564.

### A.   Modification of the Charge

Thompson takes issue with the DHO's modification of the charge conduct from a Code 329 violation to a Code 218 violation. He argues that this action ran afoul of the impartial tribunal requirement. It is his position that the purpose of the disciplinary process set forth in the Code of Federal Regulations and the BOP's Program Statements is to prevent conflicts of interest and impartialness within that process. He states "[t]his is why the DHO act in doctoring and co-authoring the report written by another officer prior to conducting a hearing regarding the same report was a fatal error and made the DHO impartial." (Doc. 12, p. 3).

In the context of prison disciplinary proceedings, due process requires that the disciplinary tribunal be sufficiently impartial. *Meyers v. Alldredge*, 492 F.2d 296, 305–07 (3d Cir.1974); *see also Wolff*, 418 U.S. 539 (disciplinary committee was sufficiently impartial so as not to violate due process). In order to insure impartiality, the DHO may not be a victim, witness, investigator, or otherwise significantly involved in the incident. 28 C.F.R. § 541.8(b). The requirement of an impartial tribunal "prohibits only those officials who have a direct personal or

otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge from sitting on the disciplinary committee." *Meyers*, 492 F.2d at 306.  The *Meyers* case involved disciplinary action against members of a prisoners' committee involved in the work stoppage. During the work stoppage, an associate warden had considerable contact with the prisoners' committee. Thereafter, the same associate warden served on the disciplinary committee. The *Meyers* court concluded that the presence of the associate warden on the disciplinary committee denied the prisoners an impartial tribunal. 492 F.2d at 305–07.  In the matter *sub judice*, the DHO did not have a direct personal or otherwise substantial involvement, such as major participation in the investigation or in the circumstances underlying the charge. Hence, Thompson's claim that the DHO compromised his ability to be impartial is without merit.

He also contends that DHO lacked authority to amend the charges. "[N]othing in the Bureau of Prisons regulations prevents the DHO from changing the offense charge in the Incident Report prior to a disciplinary hearing." *Greer v. Hogston*, 288 F. App'x 797, at *2 (3d Cir. 2008) (non-precedential).  In doing so however, it stands to reason that the inmate should be afforded written notice of the altered charge at least twenty-four hours in advance of the hearing.  In this instance, prior to commencing the hearing, the DHO informed Thompson that, in

8

light of the modification of the charge, he could opt to delay the hearing for twenty-four hours which would enable him to prepare a defense to the new charge. Thompson declined that offer, did not lodge an objection, and chose to proceed with the hearing. It is clear that Thompson was afforded all due process protections required by *Wolff*.

### B.   UDC Irregularities

Thompson argues that the disciplinary proceedings were not in accordance with the Code of Federal Regulations and BOP Program Statement which provide that the UDC consists of two members. (Doc. 1, p. 11). He states that he appeared before a one member UDC. However, Program Statement 5270.09, Inmate Discipline Program, Ch. 4 §541.7, and 28 C.F.R. § 541.7, provide that "[o]ne staff member UDCs are permitted…" (Doc. 10-2, p. 17). Hence, Thompson is not entitled to relief on this ground.

He also argues that the UDC should have determined the outcome of the matter instead of referring it to the DHO. This argument it wholly lacking in merit. Pursuant to the Program Statement and C.F.R., the UDC may take a whole host of actions, including referring the matter to the DHO for further action and review.

### III.   CONCLUSION

Based on the foregoing, the petition for writ of habeas corpus will be denied. A separate Order will enter.

s/ John E. Jones III<br>
John E. Jones III, Chief Judge<br>
United States District Court<br>
Middle District of Pennsylvania